The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Our case on the docket today is 21-1071, Mylan Laboratories v. Janssen Pharmaceutica. Please proceed, Mr. Shaw. Thank you, Your Honor. May it please the Court, Pratik Shaw for Appellee Janssen Pharmaceutica. As both this Court and the Supreme Court have made clear, the decision not to institute an IPR is committed to the PTO's discretion and, according to the plain terms of Section 314D, is final and non-appealable. It is thus no surprise that neither this Court nor the Supreme Court has ever entertained an appeal from a denial of institution. Mylan's appeal is a particularly poor vehicle to break from that uniform precedent. First, Mylan's claim that definitive factors exceed the PTO's statutorily conferred discretion is foreclosed by Quozo and Thrive, which bar appeals that are quote, closely tied to the application and interpretation of statutes related to IPR institution. Second, dressing up that claim in constitutional garb cannot salvage the appeal. Mylan's due process claim merits no further review, where Mylan lacks any protectable property right in the first place, had a fair opportunity to address definitive factors before the PTAB, and in any event, can fully challenge the validity of the patent claims at issue in federal district court, which, as the PTAB recognized, Mylan is in fact currently doing. For those same reasons, Mylan lacks any right clear enough or claim colorable enough to warrant the extraordinary exercise of mandamus relief, which is presumably why Mylan did not even seek it in its response to our motion to dismiss. Mandamus may be a viable safety valve in extraordinary cases, but this one does not come close. This appeal should be dismissed. I'm happy to answer any questions from the panel or continue making affirmative arguments. Counsel, this is Judge Newman. What's your understanding of the philosophy, the policy behind the statute, the legislation, and the system that we have that institution decisions are not appealable? Sure, Your Honor. I think what Congress was trying to do was to streamline things, to give those who wanted to challenge patents an efficient mechanism to do so, but also not to bog down the system. And so Congress carefully calibrated a scheme that allowed for review of final written decisions, and that makes sense because those final written decisions can have serious consequences. It can deprive a patent owner of a property right. It has a stopple effect, all of those sort of things. However, at the same time, Congress carefully calibrated a scheme that did not allow appeals of a denial of institution, and that also makes sense because as the Supreme Court recognized in Quozo, denials as opposed to grants of institution are committed to agency discretion, and denials present far less concern because a challenger is still generally free to pursue district court, Article III federal court challenges to the validity of the patent. And that's why, as Justice – Counsel, this is Judge Moore. You said denials as opposed to grants are committed to agency discretion. That's a direct quote. That's not accurate, is it? I think so, Your Honor. Are you saying granting is not agency – has no discretion over whether to grant or not? No, Your Honor. It has some discretion, but it's not complete discretion, and that's because to grant, the PTAB at least has to find that it meets – that there's a likelihood of success on the merits of 314A criterion, but a denial, the PTAB has greater discretion. That is, it can deny even if it finds that there's a likelihood of success on the merits, and so that's why in Quozo, in the majority court's opinion, and this is at page 2140, it talks about the difference between a grant and a denial, and that's when Justice Breyer for the court says when it comes to denials, and this is the exact quote from Quozo at 2140, the agency's decision to deny a petition is a matter committed to the patent office's discretion, and it cites Section 701A2, the APA, which says certain decisions are fully committed to an agency discretion by law. So a denial is fully committed to the agency's discretion as opposed to a grant where they have a lot of discretion, but they at least have to satisfy the statutory factor of there being a likelihood of success. Counsel, this is Judge Morgan. It's my understanding that under APA Section 701A2, while decisions are committed to the discretion of the agency, they can be challenged for constitutional reasons. Is that your understanding of the state of administrative law as well? Your Honor, there are certain cases where the court has read a decision to be committed to the agency's discretion by law and yet entertained a constitutional claim. I think, for example, Webster v. Doe is one of those Supreme Court cases where it's done that. But in doing so, the court says the hallmark is congressional intent. You have to look at whether Congress intended to keep a review mechanism available through there for constitutional claims. Here, every indication of what Congress was trying to do in the IPR scheme was to draw a distinction between denials of institution and grants of a final institution that results in a final written decision that would be appealable. Counsel, isn't that exactly what COSO held? Didn't the Supreme Court in COSO exempt out the possibility of Supreme Court challenges? I mean, this is exactly what they looked at. They looked at 314 and the extent of its impact on reviewability, and they held that even in spite of 314, constitutional challenges may be the sort of thing that are still challengeable even though 314 exists. So hasn't the Supreme Court already opened the door to the constitutional challenges and thereby sort of said expressly what they believe Congress would permit? So, Your Honor, you're right. They did say that, but in the context of review of a final written decision that goes back to collaterally attack the institution decision. And COSO makes this explicit in that particular section of its opinion where it discusses the potential constitutional exception. Counsel, this is Judge Stoll. I mean, that case did not involve a—it involved a final written decision, right? Correct, Your Honor. Yes, Your Honor. So I don't know that we can really read the court's opinion to address the situation in front of us. Do you agree with that? I mean, I don't think it forecloses the possibility that on an institution decision, if there's a true constitutional violation, that a court wouldn't be able to review that. Do you agree with that? Your Honor, I think it comes close. I do agree with you that COSO was addressing final written decisions, and that's why when it phrased the exception for constitutional claims, it specifically said we do not categorically preclude review of a final decision. And then it says such shenanigans, referring to the constitutional exception, may be proper reviewable in the context of Section 319. And again, 319— But it didn't address 314, right? Because it didn't have 314—314 didn't have an institution decision in front of it. I want to ask you something else. I understand your view, but you had mentioned Webster. Are you familiar with our court's decision in Hellman, which cites Webster? I may need a refresher on that one. Okay, Hellman is a case where there was—it's a veterans case, and the statutory provision there said that the decision of an administrative judge shall be final and not subject to any further appeal. But we said that that did not preclude judicial review of colorable constitutional claims. And we cited Webster for the view that where Congress intends to preclude judicial review of constitutional claims, its intent to do so must be clear. Like, notwithstanding that other things might not be appealable, a constitutional claim is going to be allowed unless there's some extra additional exception provided. How do you respond to that? Well, Your Honor, I think in Webster v. Doe, what's paramount is where the court reads in that exception to the statute, which might otherwise seem categorical, it does so based upon a judicial presumption based on congressional intent. And then it looks at the scheme. It looks at the congressional scheme and makes a determination, would Congress want to have let such a claim go forward? And, again, for all the reasons that I've mentioned, every indication in this congressional scheme is that denials of institution are to be treated categorically as opposed to grants. What if the PTO clearly made a constitutional violation in its non-institution decision? Wouldn't there have to be some place that the petitioner could go to seek help from the court? Yes, Your Honor, I think if there was a situation of a clear, flagrant constitutional violation, say racial animus or something like that in an institution decision, I think mandamus would provide the safety valve in this court's decision and in-ray power integrations. That's at 899 F3D 1316. This court said, look, mandamus is an extraordinary relief. And in the ordinary case, we're not going to sidestep the statutory bar by using mandamus. But then it said a caveat that it doesn't mean that mandamus will never lie in response to an action. And so it kept in a safety valve. And we think that safety valve would be appropriate. If you really had a flagrant constitutional violation, then mandamus would be the safety valve so that the court could step in and stop that. But here, of course, if we look at the constitutional claim being alleged, it is a due process claim. Here, that does not pass the extraordinary test, let alone even the colorable test, because, one, Milan is never identified. In order to have a due process claim, you have to have a deprivation of life, liberty, or property. They haven't identified any of those. They have no protectable property right. They don't have a patent at stake. They don't have a property right in having a discretionary institution proceeding. Counsel, do you understand, and I'm sure Milan will speak to this directly, do you understand their argument to be we've been deprived of due process because you didn't institute, or we've been deprived by due process because you didn't make a fair determination of whether to institute because you allowed inappropriate material to enter into the analysis? Which of those two do you understand their due process argument to be? I understand it to be the latter, and in particular, I think what's true about their due process claim is the fact that the PTAB looked at the fact that the Teva litigation was going on. The problem, Your Honor, with that sort of due process claim and why it doesn't even pass the colorable test is the PTAB didn't just look at the Teva litigation. It noted the fact that Milan is currently litigating the validity of these very same patent claims right now in an Article III federal district court where they will have every opportunity to make whatever arguments they want to make against the validity of the patent. But, counsel, I definitely, trust me, I have all those facts well in hand, and you're not misrepresenting any of them, so you need not worry. But when you're saying it's not colorable, I read this PTO decision as relying primarily upon the Teva litigation as well it should and could because that is the litigation that at the time originally it was about to go to trial. It's now long since gone to trial. I don't know if you know. Has there been any verdict in that case? There has not been a decision yet in that case. Okay. Well, but in any event, part of the reason the PTO put so much emphasis on that, no doubt, is because it was so imminent. It would be resolved way before the administrative proceeding could have ever been resolved. And, you know, I guess for me there's a line between a meritless due process challenge and one that's not even colorable. And I think that if you're denied fair process, i.e., if an agency is looking beyond the facts it should be looking at and at other facts that maybe it shouldn't, then maybe that is a colorable due process claim, though perhaps in this case meritless. What are your thoughts about that? Yes, Your Honor, I appreciate the distinction. Here I don't think we even get to the colorable because they are not alleging, for example, that the PTAB didn't give them an opportunity to address the fintive factors or to address the parallel litigation. What happened here was after Janssen filed its response to the petition, the PTAB actually granted special leave for Milan to file a reply brief just to address the fintive-related factors. And so they had a full 10-page brief just on the fintive factors and to address the Teva litigation, to address the Milan litigation. So I don't think their claim could be construed as one about having a fair opportunity to make the argument. Instead, their claim is we were deprived. Again, a due process violation requires deprivation of life, liberty, or property interest here without process of law. They don't have a property right at stake in the first place. But even if you looked past that, they have another forum. The right that they're focused on is the ability to challenge the validity of these patent claims. And as we've already discussed, they obviously have that right. They're not bound in any way by the Teva litigation. Whatever happens in the Teva litigation will not affect their ability to argue in the Milan litigation against the validity of these claims. This is unlike any of the due process cases. Mr. Paul. Oh, yes. Mr. Paul, what about the argument that in the administrative proceeding before the agency, the standard is preponderance of the evidence, so they have a lower burden there. If forced to only litigate in the district court, by contrast, they have to meet the clear and convincing standard. That does sort of change the nature of their legal burden, doesn't it? It may change the nature of their burden, Your Honor. But nobody has a property right in having a lower burden of proof in a particular proceeding. And, Your Honor, in Quozo, actually, Justice Alito spoke to this point. And this was the one point Justice Alito was in dissent. But the one point in which he agreed with the majority in Quozo was with respect to denials of institution. Even though denials were not squarely at issue, that was a final written decision case, the one point, Justice Alito says, in which he's in agreement with the majority was on denials of institution. And what he says there is, it is true that my interpretation, this is from footnote six of Justice Alito's dissent, after he says, I agree with the majority that a denial as opposed to a grant is committed to agency discretion and unreviewable under normal principles of administrative law. Here's what he says in footnote six. It is true that my interpretation leaves no apparent avenue, short of mandamus at least, for judicial review of decisions not to institute inter partes review. This demonstrates that the presumption of reviewability has its limits, nor is it surprising that Congress would design such a scheme. A patent challenger does not have nearly as much to lose from an erroneous denial of IPR as a patent owner stands to lose from an erroneous grant of IPR. Although such a challenger loses some of the advantages of IPR, such as a more favorable claim construction standard, no longer the case, and a lower burden of proof, as you mentioned, Judge Moore, quote, it remains free to challenge the patent's validity in litigation. A patent owner, on the other hand, risks the discretion of a valuable property right. So that fact is not of constitutional dimension, the fact that it may not be able to avail itself of some of the benefits of the IPR process. Okay, thank you, Mr. Shaw. Unless there's any other questions for my colleagues, we should hear from Ms. Patterson. Thank you, Your Honors. Okay. If the Court is ready for me to proceed. Proceed. Thank you. May it please the Court, Melissa Patterson for the USPTO. We agree with Danson that the type of decision the Court has before it right now, a decision declining to institute an IPR, has been uniformly and correctly held to be beyond this Court's appellate jurisdiction. Ms. Patterson, do you likewise agree with Danson that mandamus relief would be available for flagrant constitutional violations? Yes, we do, Your Honor. We do not think that 314D should be read to foreclose this Court's mandamus jurisdiction. You know, there are statutes that specifically preclude, or where Congress has indicated an intent to preclude all review, even through a mandamus action, but we don't think 314D is one of them. So we think it precludes appeals, which is what the Court has before it here, and the sort of normal appellate review of statutory constitutional claims. But we do think that this Court has the authority to issue a writ of mandamus if it thought that there were a constitutional violation made in the course of a non-institutional decision. So I think the hypothetical that Mr. Shaw posited  we do think that would be within this Court's mandamus power to address. So I suppose that goes... No, no, thank you. Thank you, Ms. Patterson. That definitely answered my question. I have another question, though. You said that 314 precludes any appeals of constitutional challenges but doesn't preclude mandamus. How do you reconcile that with CLOSO, SAS, and CLICK to Call, which, despite 314, opened the door to constitutional challenges via the 319 final written decision? So 314, at least by the Supreme Court, has not been decided to preclude constitutional challenges even in a direct appeal of that nature. How do you distinguish that? I think because of the existence of 319 and a final written decision, both in those decisions themselves, of course, as discussed earlier, those were appealed from a final written decision under 318A. But also the actual quote from CLOSO, that passage, talks about what type of review would be available if in a final written decision the PTO were actually to cancel your patent based on a constitutionally defective process or sort of wildly outside the bounds of its statutory authority referred to as a shenanigan. I don't think the court in any way suggested that there's sort of a free-floating appeal right from a non-institution decision. In fact, that was what all members of the court were sort of in agreement on. That was the easy case under 314D, is that a non-institution decision was just non-appealable. And Justice Alito, in dissent, of course, he would have accorded a narrower reading to 314D than the majority would have. But even he thought that a non-institution decision, as Mr. Shaw quoted earlier, was the case where there simply was no appellate review. Now, as indicated in the court's argument order, and as we've discussed, we don't think that foreclosures, the court's power to issue writs of mandamus in extraordinary circumstances, we do think they would need to be extraordinary and that the usual high mandamus standards would apply. But we're not here to say that there's no vehicle by which the court could review tolerable constitutional challenges to a non-institution decision. I can turn to the court's second question, which is whether or not it should construe the appeal in front of it as a petition for a written mandamus. The government does not think that would be the good exercise because of the court's discretion. We don't doubt that the court has the authority to do that. I think something similar happened in the JPNX case. But we think the better course would be to only take that step when a party has actually asked for it. And, of course, in its opposition to the motion to dismiss here, Mylan didn't ask for it. I don't know if they will ask for it in their oral argument, but we think that a party should at least affirmatively seek, if only as the alternative, the extraordinary relief of mandamus before the court goes on to consider it. If they do seek it in oral argument, given that you recognize their notice of appeal did mention it so that it wouldn't be outside the bounds of propriety and we have at least one other case in which we treated a similar notice of appeal and then went ahead and considered it as a petition, I understand your point about why we ought not to in this case. But assuming that the Mylan attorney isn't a complete fool and stands up and asks for a petition in the next, say, 15 minutes, how do you think we ought to resolve such a petition? First, we would stand by our position that it would be more appropriate to not accede to that late-breaking request. Second, if the court disagrees with us and decided to constitute us a petition for a written mandamus, we think the court could, as it has in multiple other cases where parties have actually, of course, requested mandamus relief, simply deny it. We agree with Jansen that there is no colorable constitutional claim here. We think that the type of complaints about how the agency has been exercising its unfettered discretion under 314A don't come any, no one near close to the type of flagrant violation that the Supreme Court referred to in Quovo. Or just under the general mandamus standard, the fact that you don't like how an agency is exercising its discretion is certainly no basis for the exercise of an extraordinary right. Ms. Patterson, so I certainly agree with you on what you just said about the agency's exercise of discretion has got to be outside the bounds of what's considerable under mandamus. But just out of curiosity, do you think mandamus relief of the sort that we're describing would be limited to the shenanigans and or flagrant constitutional violations that were carved out in Quovo? Or do you think that petitioners could seek mandamus relief for any, could seek it, and we would have jurisdiction to consider it for anything they think rises to an extraordinary petition? I guess what I'm trying to ask, not very artfully, is do you believe that the right to seek relief through mandamus for non-institution decisions is cabined in the same way that Quovo cabined what you could seek through a direct appeal of a final written decision, what you could challenge? Or do you think the right to seek mandamus relief is broader than that? Let me come at it this way, and tell me if this is responsive. We don't think that mandamus is sort of limited to strictly colorable constitutional claims. In other areas, sort of if something else happened during an IPR that a party thought there was a case for mandamus, if that thing were statutory, we're not saying that there's somehow a bar to considering that statutory claim on mandamus. In the particular context of a non-institution decision, because 314A has no law, as Quovo said, there is no mandate to review it. It's committed to agency discretion under 701A2, which is a very high bar. And by definition, what that means is that there's no law to apply. It's entirely within the agency's unfettered discretion to deny. So it's very hard for me to imagine with this particular type of agency action being reviewed through mandamus, how a party could ever assert a statutory violation that would make out a case for mandamus relief. Now, I think you can more clearly posit sort of an extraordinary situation involving consideration of constitutionally impermissible factors. Not that the agency would ever do that, of course, but if you had a claim that the agency denied your IPR because the patent was owned by a female patent owner and there was a policy of promoting female entrepreneurship. These are all sort of hypotheticals wildly outside of what's ever happened, but if they were ever to occur, it's much easier to sort of invent a scenario in a non-institution context that exceeds constitutional bounds, but it's hard to see to invent one that exceeds statutory bounds since those bounds just don't exist. Ms. Patterson, not a question, but I absolutely enjoy your hypothetical, given the constitution of the panel and the fact that you happen to also be a woman. So thank you. That was a good choice. Counsel, this is Judge Stoll. I just want to follow up on your answer on one point. I understood you to be saying that you couldn't imagine a scenario that wouldn't involve either shenanigans or a constitutional violation, a flagrant constitutional violation that would cause us to grant mandamus relief, but I want to make sure that I'm understanding your answer. I think the question is when can we consider whether to grant mandamus relief, which is very different than granting mandamus relief, given the high standard for mandamus relief. So I want to re-ask Judge Moore's question with that clarification in mind, which is that when are we allowed to consider, when do we have jurisdiction to consider a petition for writ of mandamus if it doesn't fall in the category of either shenanigans or a flagrant constitutional violation? I see, Your Honor. I don't think there's some sort of jurisdictional limit where the court should just turn away a mandamus petition or not allow a mandamus petition to be filed simply because it doesn't fall within one of the quoso bounds. Now, of course, once filed, I think the court could and should deny it out of hand. Of course, Prop 21 permits courts to simply deny mandamus petitions without calling for a response. And so I think unless there were the sort of allegation, if what we're talking about is a non-institution decision and someone has filed a petition for a writ of mandamus saying, you denied my IPR petition unconstitutionally or in flagrant violation of a statute, I think the court would have jurisdiction to consider the mandamus petition. It's just hard for me to imagine a scenario involving a statutory allegation that could even possibly give rise to an exercise of mandamus in this context. This is Judge Moore. Can I follow up on that? I understood you to say that our jurisdiction was not bounded. So basically someone could file a mandamus petition for any reason at all, no matter how stupid and frivolous, and we wouldn't say we can't review it for lack of jurisdiction. We would just be able to deny those without even seeking a response. So you're not worried about opening a floodgate of every single person mandamus-ing their non-institution decision, because you're hoping that we would wisely put an end to that with just clear denials and maybe even an opinion in this case that makes it clear the very, very, very narrow circumstances in which such a mandamus would ever be warranted. Is that about right? Does that sum it up? I think it does, Your Honor. I think that's about right. The mandamus statute, 1651, the theory on which disappointed petitioners would be filing directly in this court in the first place is that it would be in aid of its future jurisdiction. This is the same theory on which, you know, when there's an allegation that agency action has been unlawfully delayed or withheld, you know, because they often refer to it as track suits, right, after the D.C. Circuit case. You know, it's not that there's an agency action over which the, you know, Court of Appeals presently has jurisdiction. The whole point is that you could issue a writ of mandamus in aid of potential future jurisdiction once that agency action issued. And since the Federal Circuit is the only court that has jurisdiction to consider anything to do with interparting's review, you know, we think that, you know, it could act in aid of its jurisdiction over those matters by entertaining petitions for writs of mandamus. As you note, of course, the court, you know, could, and we think should, deny those petitions if you got a flood of them, sort of essentially trying to turn this avenue into a, you know, into an appeal route, which Congress has foreclosed, as this court explained in power integration. That would be inappropriate, and I hope that parties would not take advantage of it in that way, and I have no doubt that this court would deal with it if they did. Okay, let me just follow up a bit on that, Judge Newman, because it takes us back to really the foundation of the American Vents Act and the concerns that are just rampant over the 10 years that that statute was being debated in Congress, and the primary concern was the possibility for abuse if in the implementation of what was being proposed, which was some way of putting the patent back in the office where it would get expert review on, again, perhaps a more objective standard, less encumbered by tradition. And so here we have, I think, that some applicant that has an interest in delaying the applicability, the availability of an adverse patent, will seek opportunities for such delay and not file a mandamus petition that on its face is ludicrous or whatever else, but with a certain amount of color to it, which will put it into the system of evaluation and objectivity. And so what shines through the legislative history and through the record was the congressional and as well as the popular intent not to open the door to fresh abuses that would outweigh or at least balance the advantages of what was being proposed. So I saw your answer to Joseph's question in this context, but is this something that the office is or should be concerned about? I'm not sure what the concern in front of the USPTO is that you're positing. I think certainly the agency is concerned with providing efficient and fair proceedings. Of course, at issue in this case is the PTO's efforts to make sure that there are not duplicative or inefficient PTO PTAP proceedings going while district court litigation is proceeding. So to the extent you're asking whether or not PTO is balancing many of the statutory policies and underlying goals as it exercises its discretion, the answer is absolutely yes. I hear that I am out of time. I'm happy to answer any further questions the panel has. Ms. Patterson, could I ask you, there's one thing we haven't addressed at all, but it is the subject of a lot of the arguments in the Janssen briefing, and I want to give you a chance because you don't really have rebuttal time. So it's the 1295A4 argument, namely Janssen suggests that under 1295A4, we somehow have a direct appeal review over non-institution decisions potentially. Would you take a second and just address 1295A4 first before you sit down? Of course, Your Honor. I think that contention is squarely refuted by both the St. Jude and the Arthrex decision on which Janssen is relying. You know, Janssen suggests that Arthrex was designed to make 1295A4 an avenue to appeal non-institution decisions. Of course, Arthrex says exactly the opposite. There was a very different type of PTO decision at issue in Arthrex. It was a final unrest judgment, and Arthrex was careful because, of course, St. Jude was already on the books saying you cannot rely on 1295A4A for jurisdiction to appeal a non-institution decision. So Arthrex was careful to say that's true of non-institution decisions. We just don't think St. Jude was squarely addressing this very different type of agency decision we have before us. So, you know, I suppose there could be questions about what 1295A4A does provide jurisdiction over for decisions other than non-institution decisions, but the one thing we know for sure it does not sort of have a stand-alone jurisdictional review right over is the very type of decision the court has before it now, and I don't think the court needs to go any farther beyond that in disposing of this appeal. Could I ask you to just put St. Jude to the side for a second? I understand that it is, in fact, precedent that we are bound by, but imagine a world in which St. Jude isn't written quite as broadly as it is to say that 1295A4 is limited to final written decisions. When you look at the statute itself, is there a reason to think non-institution decisions wouldn't be within the purview of 1295? Yes, Your Honor, there are multiple reasons, and, of course, the statute itself is what St. Jude is based on. But even apart from its precedential effect, you know, of course, I would start with 314B, which says that decisions whether to institute are final and non-appealable, so therefore sort of that's a clear and direct congressional expression of its intent that the appeal rights. Ms. Patterson, so would you suggest that even if 1295A4 were ambiguous as to whether a non-institution decision is like akin to a motion to dismiss sort of thing, so even if there was some ambiguity in 1295A4, that 314 has the more specific and clear guidance which trumps the more general potential statement in 1295A4? Is that a fair assessment of your argument? I think so, Your Honor, and particularly because, of course, in CLOSO, the Supreme Court looking at 314B found clear and convincing evidence that Congress did not intend to permit review of institution decisions. And so, you know, where we have both the specific, as you said, subject matter, right, institution decisions, and we already have the Supreme Court telling us that we have clear congressional intent to preclude review, I don't think there's any question that sort of 1295 is a backdoor around those holdings. I would further note, just looking at the statute, as you asked me to, of course Congress is very specific about the type of IPR decision that it was providing, you know, appeal over, and that's a final written decision with respect to patentability under 318A. And so, you know, we think particularly in combination with 314B, Congress was pretty clearly trying to make sure that there wasn't a public jurisdiction over the outcome of sort of stage one, the institution process. Thank you, Ms. Patterson. Thank you, Your Honor. If there are no further questions, then why don't we hear from the attorney for Jansen. No? Your Honor, this is Deepam Mukherjee from Mylan. Did you mean to ask Mr. Shah to speak again, or would it be appropriate for me? No, I got the part, sorry, I got your parties mixed up. Please proceed. No, absolutely. And thank you, Your Honors, and again, Deepam Mukherjee for appellant Mylan. Your Honors, perhaps the best place for me to start in light of discussions that we've been having is that when we viewed Jansen's presentation and the government's presentation, I think the unified theme in both is that both advocate for a ruling that the 314B appellate bar is limitless. And to take the government side of it in particular, when we also consider the really where the outcome comes out is that there is no exception to the 314D bar. The 314D bar is absolute. And that simply cannot be. And if I may, Your Honor, I think it goes directly to the inquiries that the court posited to the parties in its January 29th order. Because binding decisions like CUSO, and I know we spoke about CUSO a lot, but also SASS left open that the appellate bar does not extend to circumstances where there are constitutional violations or allegations that the agency acted outside of its statutory limits. And obviously, the appeal that is before you at present alleges both. Now, that's what we have here. We have both of those files. Mr. Mukherjee, this is Judge Stoll. I understand what you're saying. And I think both the government has suggested that there, in fact, is an exception where there's a constitutional violation or, you know, shenanigans where you could seek a petition for written mandamus. And I think the government even concedes that we would have jurisdiction to consider a Let me ask you this, though. I really want to talk about your due process claim. I'm having a hard time seeing it as a colorable due process claim. So I'd like you to discuss with me the nature of your due process claim. Sure. So let me just very quickly address one aspect of the claim itself, which I'm sure the We do believe that the promulgation of the NHK SINTA factors through this ad hoc litigation as opposed to formal rulemaking under 316 is certainly a violation and that it also truncates the one-year, you know, time frame that Congress had given with respect to the filing an IPR. But bringing it to the constitutional violation itself, Judge Stoll, in the application, the promulgation of the NHK SINTA factors that the board did in connection with Milan's IPR, there is almost there is certainly primary, if not in some instances, almost solitary reliance on the TEVA litigation, particularly when it came out to the SINTA factors numbers two and number three. What does that mean? Well, when the PTAB is considering a third-party litigation whereby I have no rights, no control whatsoever over, and that litigation is the primary driving force for why the current IPR was denied, that is a due process violation. What exactly is the property right that you're being denied? Well, Your Honor, I'm not sure that a due process violation necessarily must mandate an actual deprivation of property. We have access to the IPR route. No one is saying Milan is guaranteed the right to an IPR being instituted. But we do have this pathway available to us. And when that pathway is taken away from us based on a third-party litigation, again, from a competitor, and its primary reliance is on that particular litigation, that's the deprivation because I have never been able to, I have no control. Counsel, this is Ms. Moore. Did you answer Judge Stoll's question by suggesting that you don't believe that you have to have any sort of property right in order to have a due process violation? And if so, what line of cases are you relying on? Are you saying there's a substantive due process issue here? I don't understand where you're going. No, that's a good point, Judge Moore. And there is a substantive due process problem here when we are denied access or even a fair shake to the IPR pathway based upon a third-party litigation to which I have no control. We had no say in the way that case proceeded. We have no say. We had no say in the trial, obviously. Do you have state law? This is Judge Stoll again. I would love to hear about any cases you have that could help me understand why this provides a due process claim. Truthfully, Your Honor, I'm happy to kind of get back to you on that, but I do feel like this is in some ways a case of first impression. And if we might, let's step back for a moment, too, about our industry as a whole. I mean, this Court is all too familiar about the Hatch-Waxman construct. The way this particular decision has come down, it effectively stands for the proposition that any subsequent late filer effectively doesn't have the IPR route available to it anymore because if there's a first filer litigation out there that is in far advanced stages of litigation, that's it. So a statutorily enacted pathway is taken away. Counsel, is that what the PTO said or did the PTO balance a lot of different factors, including your own litigation, and on the balance of all those factors conclude that it didn't make sense to spend administrative resources at the same time as all of that litigation was ongoing? Did the PTO really render a decision in this case to suggest that the second filer is always out of luck on IPRs? I do not believe that the PTO said that in connection with that decision. I think the practical... Counsel, can I... This is Judge Stoll. When I read the Board's decision, I looked... They mentioned and discussed not just the Teva litigation, but also the Milan litigation in each of their discussions of incentive factors one through five. Isn't that right? There is lip service given to the Milan litigation, Judge Stoll. You're absolutely right. I'm sorry, is that lip service? I do believe to the greatest extent it was lip service because the analysis, if we look at the decision closely, does focus primarily on the Teva litigation. In fact, I believe the Teva trial was mentioned five times, whereas in the Milan case, we still, to this day, do not have a trial date. And the PTAB did suppose that we would be going to trial in the summer of this year. That obviously hasn't happened. So, I take your point that... I mean, they do. They made a reasonable assumption that the trial date would be set in summer of 2021 as requested by both parties, right? As of right now, we honestly do not know when trial will occur. And again, the decision itself, and I take your point, Judge Stoll, but the decision itself is primarily based on the Teva litigation. And that is an inherent problem. And going back to, I think, the point that you were also making... Why is it an inherent problem? The Congress gave the PTO unfettered discretion to decide when not to institute. For example, IPRs are really expensive. They clearly take the agency a lot more time than do normal patent applications. Couldn't the agency, under the statute, conclude the backlog of patent applications has Maybe they issue a rule. We will not accept more than 500 IPR petitions a year or we will not grant more than 50 a year because we simply don't have the resources and we need to focus on these other things. Isn't all of that within the agency's discretion in light of the statute? They could make a decision that we're just not going to grant more than 50 of these. If the agency promulgated a rule like that through notice and comment in keeping with Section 316, then, of course, the agency is able to do that. I think that does go to what the Apple-Cisco line of cases are dealing with right now, for which there may be a rehearing. But to go back to the issue here, does the agency have the unfettered discretion to just simply deny the IPR based on a third-party litigation that I have no control over and I'm not a party to? That, I do believe, raises a significant constitutional issue. And under COSO and certainly SAS, the 314D bar doesn't encompass... Why does it raise a constitutional issue? You're not bound by it in any way. The IPR pathway, Your Honor, is gone from me. And I believe that you made a very good point during Mr. Shah's presentation too, is that there is also a different evidentiary standard. And so if my ability to prosecute these patents under the preponderance of the evidence standard is taken away from the fact that a third-party litigation is about to go to trial and where that goes, I do not believe that the PTAB has that level of discretion. I understand that I made a good point. Did you make that point in your brief? Did you say we are deprived of due process by virtue of having a different standard applied to us? I do not believe that that particular point was there. Obviously, Your Honor, the due process deprivation is replete throughout the entirety of the brief. But under the doctrine of constitutional avoidance, ought I to be the one making your due process arguments or should I be limited to the ones you actually raised? Fair enough. And they should be limited to the ones that we have raised. And I am fine with that. Just out of curiosity, we are so many minutes into your argument. Out of curiosity, are you intending to request mandamus relief at any point? I just want to get a clear answer to that. So, Your Honor, I think we all know that in order to even go the mandamus pathway, we have to first clear the 314 bar. And certainly cases like GTNX allow... That is correct. Counsel, that is not correct. Did you listen to the rest of the argument? Both of the other lawyers before you suggested that mandamus would not be limited by the 314 bar. So, we don't all know and agree to that. In fact, I think nobody agrees with it except for you. So, what... I guess, just answer my question. Are you requesting mandamus relief or not? Under GTNX, I believe that Your Honors can treat this petition as a mandamus request. I would say, though, since we are outside of the 314 bar, and we can talk about that further, but that the direct appeal route through 1295A is the best route. I am baffled. Do you appreciate that mandamus can be sought orally in oral arguments? Do you appreciate that? Yes, Your Honor, I do. And yet you said, I could treat your notice of appeal as a request for mandamus. You know what? You could also say, treat this statement as a request for mandamus. Are you doing that today? Understood, Your Honor, and yes. And we are formally requesting that then this may also be considered as a mandamus. But if... With Your Honors' indulgence, if we could just talk about the jurisdiction under 1295. Because once we're outside of 314, that's where we believe that no matter what, this court does have jurisdiction under 1295A4A. And we are cognizant of the decisions, but even in Arthrex, I think it was fairly clear that sections like 318 and 319 don't necessarily cabin 1295A4A jurisdiction. And that's the situation that we are in right now. So I think one thing that in Jansen's briefing certainly is there, is an implication that 1295 and 319 are almost synonymous. That 1295 in this type of a context is reserved for only final written decisions. And if just looking at Arthrex as an example of where you have pre-institution, albeit an adverse judgment, but that is something that's outside of 319. And the same is said on PGS, which, as Your Honors know, involved both a final written decision and non-institution decision. And the inquiry came down to, well, is there finality? If we are outside of the 314 D-bar, and I believe we are, then the question really becomes, is there finality? And under that scenario, where the 314 D-bar is inapplicable, then there is finality. Because it is not interlocutory. The IPR itself is done. So in that context, the non-institution would, in fact, fit the bill. Your Honor, I believe that was the sound for my time. If you have anything further, you definitely can go ahead, because we allowed the other lawyers to go on longer than their time. So if there's more that you want to say, please feel free. Thank you, Your Honor. No, then I will be fairly brief. But I do want to perhaps end where we were discussing this right from the beginning. I do believe that both Janssen and the government are advocating for a rule that 314 is, in fact, limitless. Because if you certainly take the government's position, there is hardly anything that could ever be appealed. It is unfettered. And that is the issue in light of certainly Supreme Court precedent and status. Now, as to the particular constitutional claim, Your Honors, again, I would submit that that does go to merits. That goes to a merits briefing on the constitutional claim itself. But there is a constitutional issue here, and that does take us outside of the 314 D-bar. And once that happens, then this court should have jurisdiction under 1295. How do you reconcile that with the very broad language in the St. Jude decision? Again, so, Your Honor, in St. Jude, the 314 D-bar was applicable. Because if memory serves, in St. Jude, the issue was one of Section 315, dealing with the one-year time frame. Even cases like Thrive, that came later on from the Supreme Court, make it clear that that is, of course, under the 314-bar. That the Director, of course, has wide discretion when it comes to that. And that is perhaps the one thing that we haven't discussed, or at least I haven't been able to express, is that no one is suggesting that the bar is not fulsome. No one is suggesting that the Director does not have a great deal of discretion. FAST goes into the exceptions to that, but Thrive categorically sets forth those categories where the discretion is absolute and complete. And so in the vast majority of situations, that bar is a bar, but not when a constitutional issue is implicated. Well, counsel, let me interrupt. This is Judge Newman. To focus on the constitutional issue, is the constitutional issue the right to challenge a patent with a more favorable burden of proof? Is this the constitutional issue in a nutshell? In a nutshell, Judge Newman, the constitutional issue is the deprivation of the IPR pathway by primary reliance on a third-party litigation that we had no control over and no rights to. And in that way, we had ultimately no control over even getting access to the IPR. Well, I heard you say that, but it isn't that standard that there is concurrent litigation. Where does that leave you if there were no concurrent district court litigation involving another party? If there were no third-party litigation such as the Teva litigation, Your Honor, we would not have a constitutional challenge before you. I think we would still embrace and side with Apple and Cisco with respect to the promulgation of the NHK Offensive Factors, but we would not have a constitutional challenge. That's quite a much more narrow and limited concept than what I had gleaned from this large, free-flowing question about for whatever reason one might raise a constitutional issue, discrimination or dramatic deprivations of due process. Your profession is limited to whether there's concurrent litigation involving a third party? The primary basis of the constitutional issue, Your Honor, is the fact of the PCAV's reliance. Using the NHK Offensive Factors on a litigation to which we don't even participate in. And so as a result of that, that in and of itself is a deprivation. And I take all the discussion that we've had on various types of constitutional violations. That, of course, goes to merits. And neither SAS nor CUSO gave parameters or outlines necessarily that the only types of issues that are outside of 314 is if it's, say, a race-based deprivation. It is a constitutional violation that is the inquiry and that determines whether or not the 314 bar applies. With that, Your Honor, again, absent other questions, I have no more. Okay. Thank you very much. We have three minutes of rebuttal by Mr. Shaw. Please proceed. Thank you, Your Honors. I'd just like to make two brief points. First, even if there were some exception written into the 314D bar in this case, one still needs an affirmative basis of appellate jurisdiction. In CUSO, because it was a final written decision, there was a separate affirmative basis of appellate jurisdiction that allowed that even if you had the constitutional exception to the 314D appellate bar, it could go forward because it was a final written decision that could be appealed under Section 319, a separate affirmative appellate grant of jurisdiction. Here, if you had an exception to the 314D bar hypothetically for a denial of institution, there would still be no affirmative basis of jurisdiction. As has already been discussed here, 1295A4 doesn't cut it. As St. Jude has held and as the structure of the statute reveals, 1294A4 could not be read fairly read to construe and grant an affirmative appellate jurisdiction over a denial of institution. I think that's the critical difference between allowing a constitutional exception in the final written decision context because there is another affirmative grant that allows the court to hear it. This court doesn't have a free-voting grant of discretion just to hear a case when there's an exception to an appeal bar. There still has to be an affirmative grant of jurisdiction. That's the first point. The second point, Your Honor, goes to the due process claim. Again, it has to be a colorable due process claim. In every Supreme Court case in which they've written in an exception for constitutional claims, it's been expressed that it has to be a colorable claim. Otherwise, people could simply utter magic words of due process. Counsel? Yes, Your Honor. Judge Moore, slow down. I'm not going to hold you to your three minutes. When you're talking so fast, it's hard for me to listen that fast. Oh, I'm sorry, Your Honor. That's okay. But wait. No, no. I have a question. Hold on. Yes. So when you're saying it has to be a colorable due process challenge, you're sort of saying that under sort of the theoretical rubric of quotas and click-to-call, which allowed an exception to 314 in 319 for constitutional challenges. But your argument to me is there's no independent jurisdiction for any sort of challenge to a non-institutional decision, even a constitutional one, right? So that it doesn't matter. I mean, putting mandamus aside, it doesn't even matter if it's a constitutional challenge, colorable or not. Your argument, as I understand it, doesn't go – isn't dependent on whether it's colorable because your view is even if colorable, there just isn't any direct route of appeal. Is that correct? Correct, Your Honor. Our primary submission would be that this court just doesn't have affirmative appellate jurisdiction of a non-institution decision, whatever the nature of the claim. However, if this court were to disagree with that and read in an exception for colorable constitutional claims, this one would fail. Okay. Right, we understand that argument. Now, let me ask another question. When it comes to mandamus, I know that you agree mandamus is a route available, and you heard Ms. Patterson explain that mandamus isn't bounded, for example, to only constitutional challenges or shenanigans, that mandamus would avail itself of a broader range of potential arguments granted under an extremely difficult standard to meet. Do you agree with that argument, namely that mandamus could be sought for pretty much any reason? Now, I don't mean to suggest it's going to be granted for any reason, and, of course, if it is sought willy-nilly, Judge – Ms. Patterson was correct that I'm sure our court would come down quite hard on such filings and award all kinds of costs and fees and other things if people get crazy about it. But do you agree with the basic proposition? The basic proposition is that mandamus could be sought on theoretically any basis. Yes, Your Honor, I agree with everything Ms. Patterson said about mandamus. Anyone can file a mandamus petition under the mandamus statute, 28 U.S.C. 1651. But whether they meet, as you mentioned, extraordinarily high criteria for mandamus relief is another question. And in the vast majority of mandamus petitions that are filed that we've looked, the vast, vast majority are simply one-word denials. Well, back for one second. You said anyone could file on any reason, and just to be clear, and we would have jurisdiction to resolve that under the very high standard in every case. There isn't an argument that we wouldn't have jurisdiction over deciding a mandamus petition. Is that correct? Your Honor, yes. I think you could look at the mandamus petition and exercise your discretion to deny it. Just to be fully – just to give you the full technical answer, there are some decisions that suggest if a court finds that the mandamus criteria do not apply, then there is a lack of jurisdiction. Now, it's sort of kind of the chicken and egg issue there. You still have to look at the criteria to determine whether they apply. And some courts have held that if the criteria don't apply, there is no jurisdiction. So in that sense, maybe you would say you didn't have jurisdiction. But I don't think as a practical matter, if I'm understanding your question, it would matter because you could look at the petition, decide whether it had any merit, and deny it. It may be as a formal matter that means you lack jurisdiction, but not to look at it. Just to be clear, you said you agree with the government. Do you also agree with the government to the extent that Ms. Patterson and the United States explained that jurisdiction for mandamus under these circumstances would flow through our ability to preserve our own future jurisdiction, that that's an independent basis for creating jurisdiction over such mandamus petitions, is a court's ability to preserve its own future jurisdiction? Yes, Your Honor. Mandamus is always being understood to protect in aid of a court's jurisdiction. And so, again, I think you would have the ability to look at the mandamus claims and assess them. And, again, here, for all the reasons we've talked about, we don't think you have to get beyond the one-word deny where they have yet to identify a property right. And the Due Process Clause, of course, itself says that deprivation of life, liberty, or property without due process of law, you don't have a property right here. And you don't have a substantive due process right, which would rewrite 200 years of constitutional law in having a special discretionary agency procedure that might have a more favorable standard of review. If there are no further questions, I'm happy to rest there. We thank all three counsel. It was an excellent argument, and it is great help to the court. So, thank you very much. That ends our proceeding. The Honorable Court is adjourned from day to day.